## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

In re:

North Pointe Holdings (BVI) Ltd. (in Liquidation), [1]

    Debtor in a Foreign Proceeding.

Chapter 15

Case No. 18-24659-AJC

## VERIFIED PETITIONS FOR ORDERS RECOGNIZING FOREIGN MAIN PROCEEDINGS AND GRANTING ADDITIONAL RELIEF AND MEMORANDUM OF LAW IN SUPPORT THEREOF

Michael Pearson of FFP Limited and Hadley Chilton of FFP (BVI) Limited, in their capacities as Joint Official Liquidators (the "**Cayman Islands Petitioners**") of Diversified Real Estate Development Ltd (in Official Liquidation); GMS Global Market Step Up Note Ltd (in Official Liquidation); Preferred Income Collateralized Interest Ltd (in Official Liquidation); Sentinel Investment Fund SPC (in Official Liquidation); SG Strategic Income Ltd (in Official Liquidation); Sports Aficionados Ltd (in Official Liquidation); and Vanguardia Group Inc (in Official Liquidation) (the "**Cayman Islands Debtors**"), Michael Pearson of FFP Limited and Stephen Briscoe of FFP (BVI) Limited, in their capacities as Joint Liquidators (the "**British Virgin Islands Petitioners**") for Vanguardia Holdings Ltd. (in Liquidation), Spyglass Investment Management Ltd. (in Liquidation), North Pointe Holdings (BVI) Ltd. (in Liquidation), and Biscayne Capital (B.V.I.) Ltd. (in Liquidation) (the "**British Virgin Islands Debtors**"), and

---

[1] On November 27, 2018, Debtor North Pointe Holdings filed a Motion for Joint Administration in 11 other related Chapter 15 Cases including Biscayne Capital (BVI) - In Liquidation, Case No. 18-24660-RAM; Vanguardia Group Inc. - In Official Liquidation, Case No. 18-24663-RAM; SG Strategic Income Limited - In Official Liquidation, Case No. 18-24665-RAM; Sentinel Investment Fund SPC - In Official Liquidation, Case No. 18-24669-RAM; Biscayne Capital Holdings Limited - In Creditor Voluntary Liquidation, Case No. 18-24670-RAM; Spyglass Investment Management Ltd. in Liquidation, Case No. 18-24662-LIM; Sports Aficionados Ltd. - In Official Liquidation, Case No. 18-24664-LIM; Diversified Real Estate Development Ltd. - In Official Liquidation, Case. No. 18-24667-LIM; Preferred Income Collateralized Interest Ltd. – In Official Liquidation, Case No. 18-24668-LIM; Vanguardia Holdings Ltd. - in Liquidation, Case No. 18-24661; and GMS Global Market Step Up Note Ltd. - In Official Liquidation.

Michael Pearson of FFP Limited and Stephen Briscoe of FFP (BVI) Limited, in their capacity as Creditor Voluntary Liquidators (the "**Bermuda Petitioners**" and together with the Cayman Islands Petitioners and British Virgin Islands Petitioners, the "**Petitioners**" or the "**Liquidators**") of Biscayne Capital Holdings Limited (in Creditor Voluntary Liquidation) (the "**Bermuda Debtor**" and together with the Cayman Islands Debtors and the British Virgin Islands Debtors, the "**Debtors**"), respectfully file official form petitions and these verified petitions (together, collectively, the "**Petitions**") for an order in the form attached hereto as <u>Exhibit A</u>, recognizing the foreign liquidation proceedings of each of the Debtor (each a "**Proceeding**") as a foreign main proceeding under section 1517 of title 11 of the United States Code (the "**Bankruptcy Code**") and granting certain additional relief under section 1521 of the Bankruptcy Code.

## I.    JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter under 28 U.S.C. § 1334.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(P).

2.      These cases have been properly commenced under section 1504 of the Bankruptcy Code by filing the Petitions in accordance with section 1515 of the Bankruptcy Code.

3.      As further set forth in the Declaration of Michael Pearson in Support of Petition for Order Recognizing Foreign Main Proceeding and Granting Additional Relief (the "**Pearson Declaration**"), which is filed contemporaneously with these Petitions and incorporated herein, the Petitioners have reason to believe that: (i) certain of the Debtors have assets in this district, including without limitation, membership interests in Florida limited liability companies, membership interests in country clubs located in the State of Florida, and/or claims against certain parties located in the State of Florida; and/or (ii) venue in the State of Florida for these

cases comports with the interests of justice and the convenience of the parties, having regard for the relief sought by the Foreign Representatives in these petitions.  Venue is therefore proper under 28 U.S.C. § 1410.  *See* Pearson Declaration at 2–3.

4.     The statutory predicates for relief are sections 1504, 1515, 1517, 1520, and 1521 of the Bankruptcy Code.

## II.     BACKGROUND

### A.     Background of FFP's Involvement with the Debtors and Related Entities Prior to their Appointment as Liquidators.

5.     Attached as <u>Exhibit B</u> to the Pearson Declaration are organizational charts for the Debtors and certain related companies, which were produced to the Liquidators by the Debtors' former management.   As set forth therein, the Debtors are all collectively owned either by Vanguardia Trust (BVI), a British Virgin Islands trust, or SBH Trust (BVI), also a British Virgin Islands trust (together, the "***Trusts***").  Both of the Trusts have a common set of beneficiaries: Mr. Ernesto Weisson, Mr. Roberto Cortes, Mr. R. Cortes Rueda, and Mr. J.C. Cortes Pablo (collectively the "***Beneficiaries***" or the "***Principals***").   Mr. Pearson has been appointed as Protector for both of the Trusts under British Virgin Islands law.  Under British Virgin Islands law, a Protector may be appointed over a trust to limit the scope of powers of the trustees and/or to require the trustees to obtain the consent of the Protector prior to taking certain actions.[2]

---

[2] These Verified Petitions contain material discussions of foreign law.  Under Rule 44.1 of the Federal Rules of Civil Procedure, incorporated into these cases pursuant to Federal Rule of Bankruptcy Procedure 9017, this Court may determine issues of foreign law and the Court may consider "any relevant material or source, including testimony."  The Foreign Representatives respectfully submit that they are not asking this Court to decide any issues of foreign law, but rather apply foreign law to determine the issues presented in these Verified Petitions.  To assist the Court, the Pearson Declaration provides extensive discussion of applicable Cayman Islands, British Virgin Islands, and Bermuda law, including true and correct copies of relevant portions of the underlying statutes.  The Foreign Representatives will file a separate notice of these matters pursuant to Federal Rule of Bankruptcy Procedure 9017.

6.      In addition to each of the Debtors, the Trusts also, directly or indirectly, own entities incorporated in the State of Florida, as well as entities organized under the laws of Argentina, Spain, Switzerland, Uruguay, Ecuador, and the Bahamas.  Until its resignation in August 2018, SGG Management (BVI) Ltd ("**SGG**") acted as Director for most of the companies owned by the Trusts, including all of the Debtors and Amicorp (BVI) Trustees Ltd. acted as Trustee for the Trusts, and in such capacity as sole shareholder of North Pointe Holdings (BVI) Ltd. (in Liquidation) and Vanguardia Holdings Ltd. (in Liquidation).  In relation to certain entities, individuals employed by SGG acted as directors.

7.      FFP was initially retained as a consultant by the Debtors in March 2018 to assist SGG in collecting the books and records of the entities owned by the Trusts.  FFP contacted various former service providers, but was only able to obtain limited books and records for certain of the companies owned by the Trusts.  SSG thereafter submitted their resignation on July 3, 2018, which resignation became effective as of August 3, 2018.

8.      At that time, Amicorp determined that it was appropriate to place the companies owned by the Trusts into liquidation proceedings and to appoint the Liquidators for each of the companies owned by the Trusts.  Amicorp initially appointed Stephen Briscoe and Michael Pearson as Liquidators of Vanguardia Holdings Ltd. and North Pointe Holdings (BVI) Ltd. on August 31, 2018.  Since their initial appointment on August 31, 2018, the Liquidators have been appointed over each of the Debtors as set forth in the documents attached as Exhibit A to the Pearson Declaration.

**B.**      **Current Understandings Concerning the Debtors' Business.**

9.      Based upon the Liquidators' current understanding, from approximately 1999 through 2007, the Principals attempted to develop real estate projects in Florida through an entity

- 4 -

known as South Bay Holdings, LLC ("**South Bay**").  South Bay is not a Debtor, but based upon the best information available to the Liquidators, was wholly owned by two of the Principals. When South Bay was originally founded, it financed its activities primarily through bank loans and "friends and family" money.

10.     The Liquidators understand from records that in 2006 and 2007, South Bay sought to significantly expand its business, including, amongst other business investments, by acquiring 29 lots and associated memberships at an exclusive resort in Key Biscayne, Florida. Starting around this time, the Principals began to form certain special purpose vehicles to sell notes (the "**Notes**") that were intended to support these development activities.  The Notes were issued in multiple series through SG Strategic Income Ltd., GMS Global Market Step Up Note Ltd., and Preferred Income Collateralized Interest Ltd., each of which is a Debtor herein. Collectively, these three entities appear to have issued not less than $260 million of these Notes; however, the actual number is yet to be verified by transaction records and statements which have not yet been received.

11.     Certain other entities that are also Debtors herein were otherwise involved with the issuance of the Notes.  For instance, Spyglass Investment Management, Inc. acted as an investment advisor related to the issuance of the Notes.  Spyglass is a Debtor in these proceedings.  Similarly, the Principals created several other financial services entities, all under the name "Biscayne Capital" that marketed the Notes to third party investors.  These entities include the following, all of which are entities in these proceedings: Biscayne Capital Holdings Limited, a Bermuda entity, and Biscayne Capital (B.V.I.) Ltd., a British Virgin Islands company. These "Biscayne Capital" entities also include numerous entities that are not Debtors in these proceedings, including (i) Biscayne Capital International, LLC, which, to the best of the

Liquidators' knowledge was a Florida limited liability company that is no longer in business; (ii) Biscayne Capital Ltd, a Bahamian entity over which Deloitte has been appointed liquidator by the Securities Commission of the Bahamas, (iii) Biscayne Capital SA and BisCap SRL, which are entities that are organized under the laws of Uruguay; and (iv) Biscayne Capital (Switzerland) AG, a Swiss entity. Biscayne Capital Holdings, Limited, the Bermuda entity, is the direct parent of all other "Biscayne Capital" entities.

12. Starting no later than 2016, the U.S. Securities and Exchange Commission (the "**SEC**") commenced an investigation of the Principals, Biscayne Capital International, LLC, and others concerning the issuance and marketing of the Notes. This investigation led to the entry of an *Order Instituting Administrative Cease-and-Desist Proceedings, Pursuant to Sections 203(e), 203(f), and 203(k) of the Investment Advisors Act of 1940, and Section 9(b) of the Investment Company Act of 1940, Making Findings, and Imposing Remedial Sanction and a Cease-and-Desist Order* (the "**SEC Order**") against Biscayne Capital International, LLC, Roberto Cortes, Ernesto Weisson, Juan Carlos Cortes, and Frank R. Chatburn. A copy of the SEC Order is attached as Exhibit C to the Pearson Declaration. The SEC Order arose as a result of the failure of Biscayne Capital International, LLC, formerly a U.S. registered investment advisor, to disclose conflicts of interest and other material information in connection with the sale of Notes between August 2010 and March 2012. These acts and omissions included, without limitation, failure to disclose that the Principals held a beneficial interest in both Biscayne Capital International, LLC, the issuers of the Notes, and South Bay, which was the beneficiary of the proceeds from the sale of the Notes. Similarly, the SEC Order found that there was inadequate disclosure to investors of South Bay's financial position, which at all relevant times was precarious.

- 6 -

13.    Finally, and related to the above, North Pointe Holdings (BVI) Limited, is a British Virgin Islands company and a Debtor herein.  North Pointe Holdings (BV) Limited holds interests in a number of Florida limited liability companies, all of which share the names "Ocean Reef Group" or "Cinnamon."  These entities hold, collectively, the Debtors' remaining interests in certain properties and club memberships in Key Biscayne, Florida.  The Liquidators understand that North Pointe Holdings (BVI) Limited acquired these interests directly from South Bay.  Many of these properties and club memberships are subject to mortgages and other encumbrances and the net liquidation value of these assets that will be available to North Pointe Holdings (BVI) Limited is uncertain at this time.  The Liquidators have also been asked to look into the circumstances and transactions involved in encumbering these assets.

C.    **FFP's Activities Since Appointment as Liquidators**

14.    Since being appointed, the Liquidators have been taking active steps to secure the Debtors' books and records, understand the Debtors' asset and liability position, manage the Debtors' assets to realize proceeds for the benefit of the Debtors' estates, communicate with creditors and other investors, and otherwise commence an investigation into the circumstances which led to the commencement of the liquidation proceedings.

15.    As an initial matter, the Debtors' current financial and operational condition bears mention.  It is tenuous.  Upon the Liquidators' appointment, there were no material liquid assets and no effective management of the Debtors.  Since the Liquidators' appointment, they have identified the assets held directly or indirectly through North Pointe Holdings (BVI) Limited (the property and club memberships in Key Biscayne, Florida) as the Debtors' only "tangible asset." This stands in sharp contrast to the funds raised from third party investors, which the Liquidators collectively believe was in the region of $300 million and may have been more.

16.    The Liquidators have also begun the process of attempting to obtain the books and records for each of the Debtors.  They have written informally to many of the former service providers for the Debtors, both directly and through U.S. counsel.  Certain of these service providers have been cooperating voluntarily.  However, many have not and the Liquidators anticipate having to serve subpoenas or other legal process to obtain records related to the Debtors.  As discussed below, the Liquidators anticipate that many of these entities will only respond and provide the Liquidators with documents upon service of a subpoena and, potentially, enforcement of the same by this Court.

17.    The Liquidators have also spent significant amounts of time communicating with investors and other creditors of the Debtors.  Many of the investors invested substantial personal and family sums into the Debtors – in certain cases as much as $50 million.  These investors and creditors have been a valuable source of information to the Liquidators and the Liquidators anticipate that certain of these investors and creditors may be active in these chapter 15 proceedings, in addition to having filed their own litigation.  For instance, Diego Romay, on his own behalf and as guardian for certain minor children, as well as other affiliated investors, has recently commenced a civil action in the Circuit Court for the Eleventh Judicial Circuit, in and for Miami-Dade County, Florida (the "***Romay Action***").  The Romay Action seeks damages for in excess of $40 million and names the Principals, South Bay, Biscayne Group Holdings, LLC, certain Amicorp entities, and other parties.  The Romay Action does not, however, name any of the Debtors in this proceeding (and, as such, would not be stayed by the recognition of the Proceedings under chapter 15).

D. **The Chapter 15 Proceeding**

18.     The Liquidators have determined to commence these chapter 15 proceedings for each of the Debtors because they believe that such proceedings are in the best interests of each of the Debtors and such proceedings are necessary to advance the liquidations, conduct an investigation into the Debtors' pre-liquidation activities, and otherwise maximize the likelihood of recovering material assets for the benefit of investors and creditors of the Debtors.   As discussed below, each of the Proceedings should be recognized as a "foreign main proceeding" within the meaning of 11 U.S.C. § 1502.

19.     The Cayman Islands, the British Virgin Islands, and Bermuda are all British Overseas Territories and are part of the Commonwealth of Great Britain.  The Cayman Islands and Bermuda each have their own court systems; the British Virgin Islands is a member of the Eastern Caribbean Supreme Court system.  In each jurisdiction, orders issued by the respective courts are ultimately appealable to the Judicial Committee of the Privy Council, which is seated in London.

20.     The primary relevant sources of law for each of the Proceedings are as follows: (i) with respect to the Cayman Islands Debtors, the Companies Law and the Companies Winding Up Rules (the "*CWR*"); (ii) with respect to the British Virgin Islands Debtors, the BVI Business Companies Act, the BVI Business Companies Regulations, and the BVI Insolvency Act; and (iii) with respect to the Bermuda Debtor, the Companies Act and the Companies (Winding Up) Rules, each as enacted in the relevant jurisdiction.   A summary of the relevant legislation applicable to each of the Proceedings is set forth in the Pearson Declaration and is summarized below; excerpts of the legislative provisions referenced in the Pearson Declaration are set forth in Exhibit D to the Pearson Declaration.

### A. *Cayman Islands*

21.     The Cayman Debtors are currently subject to official liquidation.   The primary source of law governing such proceedings is Part V of the Companies Law, sections 89 through 155.

22.     A company incorporated under the laws of the Cayman Islands may be placed into voluntary liquidation by way of resolution of its shareholder(s).[3]   That is what has occurred with respect to each of the Cayman Debtors.   In certain circumstances, a voluntary liquidation may, by order of the Grand Court of the Cayman Islands (the "***Cayman Court***"), be brought under the direct supervision of the Cayman Court whereupon it proceeds as an "official liquidation."   One circumstance where this may occur is where the directors of the company do not submit declarations of solvency in respect of the company.   *See* Companies Law § 124. That is what has occurred with respect to each of the Cayman Debtors.   When a supervision order is made, it takes effect for all purposes as though it was an order that the company be wound up by the Cayman Court. *See id*. § 133.

23.     On 5 October 2018, Messrs. Chilton and Pearson, in their capacity as joint voluntary liquidators of the Cayman Debtors filed petitions applying to bring the liquidation of the Cayman Debtors under the supervision of the Cayman Court.   Those petitions were heard on 2 November 2018 and the Honourable Justice McMillan, a Judge of the Cayman Court, entered orders in respect of each Company to the effect that the liquidations be continued under the supervision of the Cayman Court, and that Messrs. Chilton and Pearson be appointed as JOLs, which orders were filed on 6 November 2018 and are exhibited hereto at Exhibit A-1 to the Pearson Declaration.

---

[3] Sometimes liquidation of a Cayman Islands company (whether or not ordered or supervised by the Court) is referred to as "winding up" the company.

24.     When making a supervision order, the Cayman Court will appoint official liquidators to the company.  Official liquidators are statutorily directed to take control of the company[4] and are responsible for winding up the company's affairs, subject to the supervision of the Cayman Court.   Any relevant stakeholder may attend the hearing of the winding up petition (which hearing is held in open court) and may seek to challenge the appointment of the nominated liquidators.

25.     Official liquidation is a "terminal" process, in the sense that it is designed finally to wind up the company's affairs under the stewardship of the independent official liquidators, and then to bring the existence of the company to an end.  To achieve that result, Section 110 of the Companies Law provides, in relevant part, certain duties and powers on liquidators, including:

- Identifying, safeguarding, collecting, and realising the company's assets (which may also include pursuing litigation for the benefit of the estate, which depending on the nature of the claim sometimes will take the form of a claim by the company and sometimes will be a claim by the JOLs themselves);

- Identifying the company's creditors, and resolving (usually through legal proceedings before the Grand Court) any disputes as to the existence or quantum of creditor claims;

- Distributing the assets to the company's creditors (and to the extent of any surplus, to its members), in accordance with their rights;

- Meeting various reporting requirements, both to the stakeholders, and to the Cayman Court.

- Once the above steps are complete such that the affairs of the company are fully wound up, obtaining an order from the Grand Court that the company be dissolved.  There is no prescribed timeframe in which an official liquidation must be completed.

---

[4] In this case, the official liquidators were already voluntary liquidators of the Companies, and so the Companies had already been under their control in that capacity.  As Companies Law § 133(a) and (b) confirm, where a supervision order is made, the voluntary liquidation is still taken to have commenced at the time of passing the necessary resolution, and the prior actions of the voluntary liquidators are valid and binding upon the company and its official liquidators.

26.     An official liquidation is judicial in nature, in the sense that (a) it is initiated by an order of the Cayman Court; (b) throughout the liquidation process the official liquidators report to and are supervised by the Cayman Court; and (c) the liquidation is brought to a close and the company dissolved by an order of the Cayman Court.

27.     Once appointed, the official liquidators take full control of the company and its assets (again, subject to the supervision of the Cayman Court).  *See* CWR O.18 r.1(2).  The powers of the directors, who previously controlled the company, are suspended by the appointment of liquidators.

28.     Liquidators are also obligated, when appropriate, to review, assess, and when necessary, object to or compromise claims of creditors against the company in liquidation.  This is a process whereby putative creditors put forward their claims in a prescribed form, setting out the basis, particulars and evidence in support of their claims.  The Liquidators are required to adjudicate those proofs of debt in a "quasi-judicial" (that is, even handed and impartial) fashion.  *See* CWR O.16 r.1(4).  If the Liquidators reject (or admit only in part) a proof of debt, a dissatisfied creditor may appeal that rejection to the Cayman Court, which will conduct a *de novo* of the adjudication of that creditors' proof of debt.  *See* CWR O.16 rr.17 – 18.  Similarly, if a stakeholder is dissatisfied with the liquidators' decision to admit a proof of debt of another creditor, they may apply to the Grand Court to have that proof of debt expunged. *See* CWR O.16 r.20 – 21.

29.     Official liquidators are officers of the Cayman Court and are subject to the supervision of the Cayman Court.   *See* CWR O.18 r.1(1); Companies Law § 110(3).   This supervision permits any stakeholder, if dissatisfied with any action (or inaction) on the part of the liquidator, to seek an order of the Cayman Court directing the liquidator to exercise or refrain

from exercising any powers in a particular way. *See* CWR O.11 r.1(2). Liquidators must also prepare reports and accounts with respect to their conduct of the liquidation and the state of the company's affairs, and to deliver those to the Cayman Court. *See* CWR O.10 r.1(1), r.1(2)(e), O.10 r.2, O.10 r.2; Companies Law § 114(1). The Cayman Court must approve the official liquidators' remuneration. Ultimately, though rarely, the Cayman Court may also remove official liquidators, upon the application of a stakeholder. *See* Companies Law § 107.

### B.  British Virgin Islands

30.     The primary sources of law governing the liquidation proceedings of each of the BVI Debtors are the Business Companies Act, 2004 and the Insolvency Act, 2003. In the case of the BVI Debtors, Messrs. Briscoe and Pearson were appointed Liquidators pursuant to Written Resolution of the Sole Shareholder for each of the BVI Debtors pursuant to Section 88 of the Business Companies Act. Such written resolutions are valid and permit a member of a company to appoint eligible insolvency practitioners pursuant to Section 159(2) of the Insolvency Act. Both Messrs. Briscoe and Pearson are eligible insolvency practitioners in the British Virgin Islands.

31.     Immediately upon the BVI Debtors being placed into liquidation, the Liquidators were vested with custody and control of the BVI Debtors' assets. *See* Insolvency Act § 175(1)(a). And, while the directors of the BVI Debtors remain in office, they cease to have any power, function or duties. *Id*. § 175(1)(b). And, unless the High Court of the British Virgin Islands (the "***BVI Court***") orders otherwise, no person may commence or proceed with any

action or proceeding against the BVI Debtors or their assets, nor may any person exercise or enforce any right or remedy of their assets.  *Id*. § 175(1)(c).[5]

32.    A liquidator, in all circumstances, acts as an officer of the BVI Court and an agent of the company in liquidation.  *Id*. § 184.  The duties of a liquidator are to take possession of, protect, and realise all assets of the company in liquidation and to distribute those assets in accordance with the priorities set forth in the Insolvency Act.  *Id*. § 185.  A liquidator is granted all powers necessary to carry out the functions and duties of a liquidator under the Insolvency Act.  *Id*. § 186.  These powers include, without limitation, the power to bring claims on behalf of and defend claims against the company in liquidation, dispose of the company's property, compromise and settle claims of creditors, and pay creditors from the assets of the company.  *See* Insolvency Act, Schedule 2.  The Liquidators, while officers of the BVI Court, may also apply to the BVI Court at any time for directions in connection with the conduct of the liquidation.  *See* Insolvency Act § 186(5).  The BVI Court also retains the power to remove the Liquidators for certain enumerated causes.  *Id*. § 187.

33.    As with insolvency proceedings in the Cayman Islands, the Liquidators have a duty to investigate the assets and affairs of the company in liquidation and issue report to creditors and contributories (*i.e.*, shareholders) of the company in liquidation and otherwise has an obligation to call meetings of creditors in certain circumstances.  *See, e.g., id*. §§ 226, 228.  And, the creditors may also establish a creditors committee at any time after the appointment of liquidators to represent their interests.  *Id*. § 421(1)(c).

34.    The Liquidators may also require creditors to submit claims and may with adjudicating those claims.  *Id*. § 209.  The Liquidators, as officers of the BVI Court, act in a

---

[5] A secured creditor, however, may take possession of and realise or otherwise deal with assets of the company in liquidation over which such creditor has a security interest.  *Id*. § 175(2).

quasi-judicial capacity in this process.  When the Liquidators reject a claim in whole or in part, they must provide the creditor with the reasons for such rejection.  *Id*. § 209(4).

35.     Once the Liquidators have liquidated the assets of the company in liquidation and adjudicated the claims against the company, the Liquidators are obligated to distribute all assets of the company to creditors and contributories in accordance with the applicable priorities under the Insolvency Act.  *Id*. § 207.  Upon the completion of the Liquidators' duties, they must issue a final report to creditors and contributories, seek to have the company in liquidation struck from the Register of Companies and otherwise dissolve the company in liquidation.  *Id*. § 234.

### C. Bermuda

36.     Biscayne Capital Holdings Limited, a Debtor herein, is subject to a "creditors' voluntary liquidation" in Bermuda.  The primary sources of Bermuda law that define the scope of a creditor voluntary liquidation proceeding are Sections 216 to 233 of the Companies Act, to which the Bermuda Debtor is subject.  Messrs. Briscoe and Pearson's appointment as Liquidators of the Bermuda Debtor was effectuated pursuant to Section 216 of the Companies Act, which required the directors of the Bermuda Debtor to call a meeting of the creditors of the Bermuda Debtor through advertisement in an "appointed newspaper" on at least two occasions. At the creditors meeting, a director of the company must cause a full statement of the position of the company's affairs together with a list of creditors and an estimated amount of their claims to be set forth for the creditors.  *See id*. § 216(3)(a). At the creditors meeting, the creditors and the company may each nominate a liquidator.  *Id*. § 217(a).  Messrs. Briscoe and Pearson were the nominated Liquidators appointed at the creditors meeting of the Bermuda Debtor.  The Liquidators are statutorily directed to wind up the affairs of the company in liquidation and

distribute those assets in accordance with the statutory priorities of creditors and investors.  *See id*.

37.     In a creditor voluntary liquidation, the creditors may, if they deem it appropriate, appoint a "committee of inspection" of not more than five creditors.  The committee of inspection is granted statutory rights, certain of which are described below, that generally permit creditors an opportunity to ensure that their interests are being properly represented by the liquidators.  *See id.* § 218.

38.     Liquidators are granted specific powers to effectuate these duties.  These powers include the power to bring and defend actions by or against the company, to carry on the business of the company for purposes of winding up the company, pay creditors with the assets of the company, and otherwise compromise and settle the claims of creditors and investors against the company.  *See id.* §§ 226(1)(a), (b); 175(1)(a), (b), (d), (e).[6]  When a company is insolvent, the Liquidators are statutorily directed to distribute the company's assets *pari passu* amongst its creditors.  *Id.* § 225.  The Liquidators may also propose an arrangement for the compromise of debts that may, subject to rights of appeal, be binding upon the creditors of the company if three quarters of creditors (both by number and value) consent to the arrangement. *Id.* § 229.

39.     At various points, the Liquidators are subject to Court oversight.  As noted above, certain powers may only be exercised by sanction of the Court (or approval of the committee of inspection).  Additionally, the Court exercises broad oversight through the power to remove liquidators for cause.  *Id.* § 227(2).  Furthermore, the Liquidators, as well as creditors and

---

[6] The power to pay creditors and compromise the claims of creditors may only be exercised with the sanction of the Court or the consent of the committee of inspection.

contributories (*i.e.*, shareholders) are granted the power to petition the Court to determine any issue that may arise in the course of the liquidation. *Id*. § 231(1).

### D.    Basis and Determination to Seek Chapter 15

40.    The Liquidators have determined to submit each of the Petitions and related papers to have each of the Proceedings recognized by this Court as a "foreign main proceeding" and to recognize Messrs. Chilton and Pearson as "foreign representatives" of the Cayman Debtors and Messrs. Briscoe and Pearson as "foreign representatives" of the BVI Debtors and the Bermuda Debtor, in accordance with section 101(24) of the Bankruptcy Code.

41.    The need for recognition under chapter 15 of the Bankruptcy Code is clear. Based upon the investigation to date, it is clear that the Debtors were under common control and controlled for the common benefit of the Principals.  The Debtors collectively raised a significant amount of money from third party creditors, which was intended to be deployed for the purpose of real estate and related investments, both inside and outside the United States.  However, much of the money that was raised has been dissipated and, currently, the creditors of each of the Debtors stand to suffer a near total loss of their invested capital.

42.    The Liquidators have been attempting to obtain the books and records of the Debtors.  While certain parties in possession of those books and records have cooperated, many have not, including many parties located in the United States.  It is likely that, to collect the Debtors' books and records, it will be necessary for the Liquidators to issue subpoenas and other legal process.

43.    Ultimately, it is likely that the Liquidators may conclude through their investigation that the Debtors have viable claims against third parties for recovery of damages. Recognition of the Proceedings through this chapter 15 proceeding will provide the Liquidators

with a venue through which they may ultimately be able to bring such claims. Equally importantly, given that the Proceedings and the investigations are in their infancy, recognition of the Proceedings will toll many of the claims the Liquidators may be able to bring that touch and concern the United States for two years under 11 U.S.C. § 108. This tolling will afford the Liquidators an opportunity to conclude their investigations and properly and timely assert claims against third parties who may have engaged in wrongful conduct.

44.    It is appropriate to recognize each of the Proceedings as a "foreign main proceeding." Each Debtor's center of main interests ("**COMI**") is located in the jurisdiction in which its liquidation Proceeding is pending. Each Debtor is organized under the laws of the jurisdiction in which its liquidation Proceeding is pending. Similarly, the registered office for each of the Debtors is located in the jurisdiction in which its Proceeding is pending. Specifically, the registered office for each of the Debtors is as follows:

> *Cayman Islands Debtors:* formerly c/o AFA Legal Resources (Cayman) Ltd., Artemis House, Second Floor, 67 Fort Street, George Town, Grand Cayman KY1-1109, Cayman Islands and now c/o FFP Limited, Harbour Centre, 42 North Church St, George Town, Grand Cayman, KY1-9006, Cayman Islands;

> *Biscayne Capital Holdings Limited:* c/o BCB Charter Corporate Services Limited, Trinity Hall, 43 Cedar Avenue, Hamilton HM12, Bermuda;

> *Vanguardia Holdings Ltd. (in Liquidation), North Pointe Holdings (BVI) Ltd. (in Liquidation) and Biscayne Capital (B.V.I.) Ltd.:* formerly c/o Amicorp B.V.I. Limited, Marcy Building I 2nd Floor, Purcell Estate I P.O. Box 2416, Road Town I Tortola, British Virgin Islands and now c/o FFP (BVI) at 2nd Floor TICO Building, Wickhams Cay II, P.O. Box 4441, Road Town, Tortola, British Virgin Islands, VG 1110; and

> *Spyglass Investment Management Ltd. (in Liquidation):* formerly c/o Mossack, Fonseca & Co (B.V.I.) Ltd., Akara Building, 24 De Castro Street, Wickhams Cay I, Road Town Tortola and now c/o FFP (BVI) at 2nd Floor TICO Building, Wickhams Cay II, P.O. Box 4441, Road Town, Tortola, British Virgin Islands, VG 1110.

45.    The "organic" law for each of the Debtors – specifically the law that will govern their winding-up, dissolution, resolution of claims, and distribution of assets, as described in

detail above – is the law governing each of the Proceedings, which in turn is the law of incorporation for each of the Debtors.

46.    Similarly, as set forth in detail above, the liquidations of each of the Debtors is, to varying degrees, overseen by the Cayman Court, the BVI Court, and the Bermuda Court, respectively.  Those Courts have the jurisdiction to oversee and determine issues of primary importance in the Proceedings, including, without limitation, the identity and oversight of the Liquidators, the realization and distribution of assets of the Debtors, and any disputed issues that may arise in the course of the Proceedings.

47.    Additionally, specifically with respect to the Cayman and BVI Debtors, the Liquidators are physically situated in the Cayman Islands and the British Virgin Islands and have been since and prior to their appointment.  Thus, the operative decision making for the Debtors has emanated from both the Cayman Islands and the British Virgin Islands.[7]  And, with respect to all of the Debtors, while the creditors and investors appear to be global in scope, the center of the collection and distribution of the Debtors' assets and resolution of claims against the Debtors will be focused in the jurisdictions in which the Proceedings are pending.

48.    Finally, as set forth further below, recognizing each of the Proceedings as a foreign main proceeding is consistent with the purposes of chapter 15 of the Bankruptcy Code and the public policy of the United States.

---

[7] While the physical location of the Liquidators is a factor that the Court may rely upon in determining COMI, it is not the exclusive factor, nor – in the case of the Bermuda Debtor – should it be the dispositive factor. There is a very strong interest in having each of the liquidations overseen by a common set of Liquidators, based upon the facts presented by these Debtors as set forth in the Pearson Declaration.  And, even though FFP does not formally have an office in Bermuda, Messrs. Briscoe and Pearson remain in all respects subject to the laws of Bermuda in the conduct of the liquidation of the Bermuda Debtor and, ultimately, subject to the oversight of the Bermuda Court.

### III.    RELIEF REQUESTED

49.    The Petitioners respectfully request an order, substantially in the form attached

hereto as Exhibit A:

(a)    recognizing each of the Foreign Proceedings, under section 1517 of the
Bankruptcy Code, as a "foreign main proceeding," as such term is defined in section
1502(4) of the Bankruptcy Code;

(b)    granting relief automatically and as of right upon recognition of the
Foreign Proceedings as a foreign main proceeding under section 1520(a) of the
Bankruptcy Code;

(c)    granting certain additional relief pursuant to section 1521(a) of the
Bankruptcy Code, including an injunction prohibiting all persons and entities, other than
the Petitioners and their representatives, attorneys, and agents, from: (i) commencing or
continuing an action or proceeding concerning any of the Debtors' assets, rights,
obligations, or liabilities; (ii) executing against any of the Debtors' assets; (iii) taking or
continuing any act to create, perfect, or enforce a lien or other security interest, setoff, or
other claim against the Debtors or their property; (iv) transferring, relinquishing, or
disposing of any property of the Debtors to any person or entity other than the
Petitioners; or (v) declaring or considering the commencement of the Foreign Proceeding
or the Debtors' chapter 15 case a default under any agreement, contract, or arrangement;

(d)    in accordance with section 1521(4), providing for the examination of
witnesses (including any and all parties or persons subject to examination under F.R.B.P.
2004), the taking of evidence or the delivery of information concerning the Debtors'
assets, affairs, rights, obligations, or liabilities;

(e)    in accordance with sections 1521(a)(5) and (b) of the Bankruptcy Code,
entrusting the administration, realization, and distribution of the Debtors' assets located
in the territorial jurisdiction of the United States to the Petitioners; and

(f)    awarding the Petitioners such other relief as this Court may deem just and
proper.

### IV.    BASIS FOR RELIEF REQUESTED

### A.    All Requirements for Recognition Under Section 1517(a) Are Satisfied.

50.    Section 1517 of the Bankruptcy Code lays out a two-step process for granting

recognition to a foreign proceeding:

- *First*, section 1517(a) of the Bankruptcy Code provides that "an order recognizing a foreign proceeding shall be entered if . . . (1) such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign nonmain proceeding within the meaning of section 1502; (2) the foreign representative applying for recognition is a person or body; and (3) the petition meets the requirements of section 1515." 11 U.S.C. § 1517(a).

- *Second*, section 1517(b) of the Bankruptcy Code provides that a foreign proceeding "shall be recognized . . . (1) as a foreign main proceeding if it is pending in the country where the debtor has the center of its main interests [("***COMI***")]." 11 U.S.C. § 1517(b)(1).

All requirements for recognition of the Foreign Proceedings as foreign main proceedings are satisfied here. 11 U.S.C. § 1502(4).

### i.    The Foreign Proceedings Are Foreign Main Proceedings.

#### a.    Each Proceeding is a "Foreign Proceedings" within the meaning of Section 101(23) of the Bankruptcy Code.

51.    Section 101(23) of the Bankruptcy Code defines "foreign proceeding" as "a collective judicial or administrative proceeding in a foreign country . . . under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation." 11 U.S.C. § 101(23).  Courts have identified seven criteria to establish that a "foreign proceeding" under section 101(23), which are: (i) the existence of a proceeding; (ii) that is either judicial or administrative; (iii) that is collective in nature; (iv) that is in a foreign county; (v) that is authorized or conducted under a law related to insolvency or adjustment of debts; (vi) in which the debtor's assets and affairs are subject to the control or supervision of a foreign court; and (vii) which proceeding is for the purpose of reorganization or liquidation.  *See, e.g., In*

*re Betcorp Ltd.*, 400 B.R. 266, 277 (Bankr. D. Nev. 2009).  Neither criterion (i) nor (iv) – the existence of a proceeding in a foreign country – are in any dispute here.  As set forth below, the Proceedings satisfy each of the other criteria to establish each of the Proceedings as a "foreign proceeding."

52.     Criterion (ii) and (vi) are overlapping and together require that the proceeding be "either judicial or administrative" and that the debtor's "assets and affairs be subject to the control or supervision of a foreign court."  Courts recognize that this is "not a demanding standard."  *In re Ashapura Minechem Ltd.*, 480 B.R. 129, 138 (S.D.N.Y. 2012).  It does not require day-to-day control by the foreign court.  When a court, for instance, monitors a repayment plan between a debtor and its creditors, that is sufficient.  *See In re Oversight and Control Commission of Avanzit, S.A.*, 385 B.R. 525, 536 (Bankr. S.D.N.Y. 2008).  Similarly, just because interested parties may initiate a proceeding and independent liquidators may be appointed and proceed with their duties without substantial court involvement does not "undermine the court's supervisory role." *In re ABC Learning Centres, Ltd.*, 445 B.R. 318, 332 (Bankr. D. Del. 2010).

53.     Each of the Proceedings satisfies criteria (ii) and (vi).  As set forth in the Pearson Declaration, each of the Proceedings is subject to the oversight, respectively, of the Cayman Court, BVI Court, and Bermuda Court.  The Cayman Court has entered a specific supervisory order related to the Cayman Debtors, which requires the Liquidators to report to the Cayman Court periodically and to obtain an order of the Cayman Court in connection with the dissolution of the Cayman Debtors.  *See* Pearson Declaration ¶ 22-23; 25; Exhibit A-1.  Similarly, the Cayman Court will review *de novo* the Liquidators' determination of proofs of debt.  *Id.* ¶ 27. Similarly, the Cayman Court retains an ultimate authority to compel the Liquidators to act or

refrain from acting, approves the Liquidators remuneration, and otherwise may remove the Liquidators from their office in appropriate circumstances.  *Id.* ¶ 28.

54.     With respect to the BVI Debtors, the Liquidators specifically act as officers of the BVI Court in the conduct of their duties.  *Id.* ¶ 31.  In such a capacity, the Liquidators are directed to liquidate the assets of the company in liquidation and may apply to the BVI Court for direction in the course of the liquidation.  *Id.*  Similarly, in appropriate circumstances, the BVI Court may remove the Liquidators from their office for certain enumerated causes.  *Id.*

55.     With respect to the Bermuda Debtor, the Bermuda Court may determine any issue brought to it by the Liquidators, creditors, or contributories in the course of the liquidation.  *Id.* ¶ 38.  The Bermuda Court may also remove the Liquidators and the Bermuda Court has the power to authorize the payment of creditors from the assets of the company in liquidation.  *Id.*

56.     For each of the foregoing reasons, each of the Proceedings is "judicial or administrative" and assets and affairs are subject to the "control or supervision" of the Cayman Court, BVI Court, and Bermuda Court respectively.  Therefore, both criteria (ii) and (vi) are satisfied.

57.     Criterion (iii) is also satisfied – each of the Proceedings is also a "collective proceeding." A "collective" proceeding is one where the benefits of the proceeding are shared collectively among the Debtors' creditors, rather than one that is intended to benefit only a single creditor.  *See, e.g., Armada (Singapore) Pte Ltd. v. Shah (In re Ashapura Minechem Ltd.)*, 480 B.R. 129, 136–37 (S.D.N.Y. 2012).  Attributes of a "collective" proceeding include proceedings where similarly situated creditors are treated in a similar fashion, where assets are distributed according to statutory priorities, and where creditors have a mechanism to seek court review of decisions made in the course of the proceeding.

58.     Each of the Proceedings is a collective proceeding.  With respect to the Cayman Debtors, all stakeholders were provided notice of the winding up petition.  *See* Pearson Declaration ¶ 23.  Stakeholders may also petition the Cayman Court for a review of any decisions made in the course of the Proceedings.  *Id.* ¶ 28.  And the rights of creditors and other stakeholders of the Cayman Debtors to receive distributions is prescribed by statute.  *Id.* ¶ 24.

59.     Similarly, with respect to the BVI Debtors, the distribution of assets is subject to prescribed statutory priorities.  *Id.* ¶ 31.  Assets are collected for the benefit of all creditors.  *Id.* The Liquidators are charged with the review of and determination of each claim against the BVI Debtors.  *Id.* ¶ 33.  They are also required to issue reports to all creditors and call meetings of all creditors.  *Id.* ¶ 34.  And the BVI Court may review and decide issues that arise in the course of the liquidations.  *Id.* ¶ 31.

60.     With respect to the Bermuda Debtor, all creditors were provided notice of the creditors meeting and were provided an opportunity to participate in the Liquidators appointment.  *Id.* ¶ 35.  This meeting was conducted where all creditors had the identity of all of the other creditors and an estimate of the amount that they were owed.  *Id.* ¶ 35.  Creditors are also entitled to form a committee of inspection.  *Id.* ¶ 36.  And creditors are paid pursuant to a specified statutory scheme of priorities.  *Id.* ¶ 37.  The Bermuda Court is ultimately has the power to decide any issues that may arise in the course of the Proceeding.  *Id.* ¶ 38.  Thus each of the Proceedings is a "collective" proceeding for purposes of section 101(23) of the Bankruptcy Code.

61.     Finally, both criteria (v) and (vii) are satisfied.  Each of the Proceedings is authorized or conducted under a law related to insolvency or adjustment of debts and is for the purpose of reorganization or liquidation.  As set forth in the Pearson Declaration, the focus of

each Proceeding is to collect in the assets of each of the Debtors (including through the investigation and pursuit of third party claims), examine and, if necessary, adjust the claims of various creditors, pay out creditors in accordance with their statutory priorities, and then terminate, liquidate, and dissolve each of the Debtors. *See generally* Pearson Declaration ¶¶ 20-38. Thus both criteria (v) and (vii) are satisfied. And, because each of the Proceedings satisfy each of the seven criteria, each Proceeding is a "foreign proceeding" within the meaning of section 101(23) of the Bankruptcy Code.

b.    Each Proceeding is a Foreign "Main" Proceeding.

62.    Each Proceeding is a "foreign main proceeding." Section 1502(4) of the Bankruptcy Code defines a foreign main proceeding as "a foreign proceeding pending in the country where the debtor has the center of its main interests." 11 U.S.C. § 1502(4). As further set forth below, each Debtor's COMI is located in the jurisdiction where each Proceeding is pending.

63.    Section 1516(c) of the Bankruptcy Code provides that, "absen[t] evidence to the contrary, the debtor's registered office . . . is presumed to be the center of the debtor's main interests." 11 U.S.C. § 1516(c). Because the COMI is undefined in the Bankruptcy Code, this presumption comports with judicial precedent that "generally equates [the COMI] with the concept of 'principal place of business' in the United States." *In re Millennium Global Emerging Credit Master Fund Ltd.*, 458 B.R. 63, 72 (Bankr. S.D.N.Y. 2011) (quoting *In re Tri-Continental Exchange Ltd.*, 349 B.R. 627, 634 (E.D. Cal. 2006)); *see also In re Basis Yield Alpha Fund (Master)*, 381 B.R. 37, 48 (Bankr. S.D.N.Y. 2008) (using "COMI" and "principal place of business" interchangeably). Thus, in determining the COMI, courts have considered "any relevant activities, including liquidation activities and administrative functions . . . the

- 25 -

location of the debtor's headquarters; the location of those who actually manage the debtor . . . the location of the debtor's primary assets; the location of the majority of the debtor's creditors or of a majority of the creditors who would be affected by the case; and[] the jurisdiction whose law would apply to most disputes." *See In re Suntech Power Holdings Co., Ltd.*, 520 B.R. 399, 416 (citing *Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*, 714 F.3d 127, 137 (2d Cir. 2013)).  COMI should be assessed as of the date of the filing of the chapter 15 proceeding.  *See, e.g., In re British American Ins. Co., Ltd.*, 425 B.R. 884 (Bankr. S.D. Fla. 2010).

64.    Here, since the Debtors have their registered offices in the locations where the underlying Proceedings are pending, the Cayman Islands, British Virgin Islands, and Bermuda are their presumed COMI.  11 U.S.C. § 1516(c).  This presumption is supported by the underlying facts.  As set forth in detail in the Pearson Declaration, the Liquidators are obligated to collect and liquidate all of the Debtors' assets, wherever located, and bring them, respectively, to the Cayman Islands, British Virgin Islands, and Bermuda for distribution through a Court-approved and statute sanctioned distribution priority.  Any disputes over the application of those statutes will be referred to and decided by each applicable Court.  Furthermore, since the appointment of the Liquidators, they have taken active steps to assess each Debtor's assets, collect in the books and records of each of the Debtors, and otherwise focus on their statutory duties to liquidate each of the Debtors.  Therefore, each of the Proceedings is and should be recognized as a foreign main proceeding.

ii.    **The Petitioners are Qualifying Foreign Representatives.**

65.    Section 101(24) of the Bankruptcy Code defines "foreign representative" as "a person . . . authorized in a foreign proceeding to administer the reorganization or the

- 26 -

liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding." 11 U.S.C. § 101(24).  The Petitioners satisfy this definition.  First, the Petitioners are individuals and thus "persons" under section 101(41) of the Bankruptcy Code.  Second, in accordance with the Appointment Orders, the Petitioners are authorized to administer the liquidations of each of the Debtors' assets in accord with the terms of the Appointment Orders. *See* Pearson Declaration, Exhibit A.

### iii.    The Petition Meets the Requirements of Section 1515.

66.    Finally, the Proceedings satisfies the procedural and evidentiary requirements of section 1515 of the Bankruptcy Code that are necessary for recognition as a foreign main proceeding.  Under Section 1515, a petition must be filed with the court and accompanied by certain statements and documents.  *See* 11 U.S.C. § 1515.  The Petitions here, as supported by the Pearson Declaration, meets these requirements.

67.    *First*, the Petitioners properly filed the Petitions on behalf of the Debtors in accordance with section 1515(a) of the Bankruptcy Code.

68.    *Second*, as required under section 1515(b) of the Bankruptcy Code, documents evidencing each Proceeding's existence and the Petitioners' appointment are attached as <u>Exhibit A</u> to the Pearson Declaration.

69.    *Third*, the Pearson Declaration includes a statement that each of the Proceedings is the only foreign proceeding with respect to each of the Debtors known to the Petitioners, thereby satisfying Section 1515(c)'s requirement to list all known foreign proceedings pending with respect to a debtor.

70.    *Fourth*, the Pearson Declaration includes all information required by Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure, including a corporate ownership

statement, a list of all persons authorized to administer each Debtor's assets, a list of all parties to litigation pending in the U.S. in which each Debtor is a party, and a list of all entities, if any, against whom provisional relief is being sought under section 1519 of the Bankruptcy Code.

**B.** **The Petitioners' Request Necessary and Appropriate Relief under Section 1521(a).**

71.     Pursuant to section 1521(a) of the Bankruptcy Code, the Petitioners request that this Court enter an order granting certain additional relief as described above. The Court has authority, upon recognizing each Proceeding, to grant "any appropriate relief" under section 1521(a) of the Bankruptcy Code when necessary to effectuate chapter 15's purpose and protect the Debtors' assets or the interests of its creditors and other stakeholders. The additional relief requested in each Petition is "appropriate" because it is necessary to (i) identify and pursue the Debtors' assets in the U.S. (including potential claims), (ii) protect the Debtors' assets from pending or future litigation, and (iii) generally ensure each Proceeding's success.

72.     Under section 1522(a) of the Bankruptcy Code, this Court may only grant additional relief under section 1521(a) of the Bankruptcy Code if creditors' interests are "sufficiently protected." In making this determination, courts balance the interests of the foreign representatives with the interests of creditors and other affected parties. *CT Inv. Mgmt. Co. v. Cozumel Caribe, S.A. de C.V. (In re Cozumel Caribe, S.A. de C.V.)*, 482 B.R. 96, 108 (Bankr. S.D.N.Y. 2012); *In re AJW Offshore, Ltd.*, 488 B.R. 551, 559 (Bankr. E.D.N.Y. 2013). And in considering creditors' interests, the limitation in Section 1522(a) only applies where "it is shown that the foreign proceeding is seriously and unjustifiably injuring United States creditors." *See* H. Rep. No. 109-31, pt. 1, 109th Cong., 1st Sess. 116 (2005).

73.     The circumstances here demonstrate that creditors' interests are "sufficiently protected." Each Proceeding affords creditors proper treatment because each Debtor's

liquidation will treat each creditor in accordance with the priorities set forth in each of the Proceedings.  Next, U.S. creditors will not be subject to undue prejudice.  And the distribution of each Debtor's assets is similar to what might occur under U.S. law.  Finally, even if creditors could prove harm to their interests, the need to ensure the efficiency and success of the Proceeding outweighs that harm.

WHEREFORE, the Petitioners respectfully request an order, substantially in the form attached hereto as Exhibit A, granting the relief requested herein and such other and further relief as this Court deems just and proper.

Dated: November 27, 2018
Miami, Florida

EFR LAW FIRM

/s/ Eduardo F. Rodriguez
Eduardo F. Rodriguez (Florida Bar No. 36423)
1548 Brickell Avenue
Miami, Florida 33129
(305) 340-0034 (telephone)

ALSTON & BIRD LLP

William S. Sugden (*pro hac vice pending*)
Jonathan T. Edwards (*pro hac vice pending*)
1201 West Peachtree Street
Atlanta, Georgia 30309
(404) 881-7000 (telephone)

*Attorneys for the Foreign Representatives*

# **EXHIBIT A**

**[Proposed Order]**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 15 |
| North Pointe Holdings (BVI) Ltd. (in | ) | |
| Liquidation), | ) | Case No. 18-24659-AJC |
| | ) | |
| Debtor in a Foreign Proceeding. | ) | |

**ORDER RECOGNIZING FOREIGN MAIN PROCEEDING**
**AND GRANTING ADDITIONAL RELIEF**

This Court held a hearing on _____, to consider the official form and

verified petitions, filed on November 27, 2018 (together, the "***Petitions***") by Michael Pearson

of FFP Limited and Hadley Chilton of FFP (BVI) Limited, in their capacities as Joint Official

Liquidators (the "***Cayman Islands Petitioners***") of Diversified Real Estate Development Ltd (in

Official Liquidation); GMS Global Market Step Up Note Ltd (in Official Liquidation);

Preferred Income Collateralized Interest Ltd (in Official Liquidation); Sentinel Investment Fund

SPC (in Official Liquidation); SG Strategic Income Ltd (in Official Liquidation); Sports

Aficionados Ltd (in Official Liquidation); and Vanguardia Group Inc (in Official Liquidation)

(the "***Cayman Islands Debtors***"), Michael Pearson of FFP Limited and Stephen Briscoe of FFP

(BVI) Limited, in their capacities as Joint Liquidators (the "***British Virgin Islands Petitioners***")

for Vanguardia Holdings Ltd. (in Liquidation), Spyglass Investment Management Ltd. (in

Liquidation), North Pointe Holdings (BVI) Ltd. (in Liquidation), and Biscayne Capital (B.V.I.)

Ltd. (in Liquidation) (the "***British Virgin Islands Debtors***"), and Michael Pearson of FFP

Limited and Stephen Briscoe of FFP (BVI) Limited, in their capacity as Liquidators (the

"***Bermuda Petitioners***" and together with the Cayman Islands Petitioners and British Virgin

Islands Petitioners, the "***Petitioners***" or the "***Foreign Representative***") of Biscayne Capital

Holdings Limited (in Creditor Voluntary Liquidation) (the "**Bermuda Debtor**" and together with the Cayman Islands Debtors and the British Virgin Islands Debtors, the "**Debtors**").  The Foreign Representatives seek an order from the Court recognizing the winding up and liquidation of each of the Debtors (each a "**Proceeding**" collectively the "**Proceedings**") as a foreign main proceeding under section 1517 of title 11 of the United States Code (the "**Bankruptcy Code**") and granting certain additional relief under section 1521 of the Bankruptcy Code.  After due deliberation and sufficient cause appearing therefor, this Court makes the following findings of fact and conclusions of law:

A.      This Court has jurisdiction over this matter under 28 U.S.C. § 1334.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(P).  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408, 1409 and 1410.

B.      The Petitioners are "persons," as such term is defined in 11 U.S.C. § 101(41).

C.      The Debtors are eligible to be a debtor under 11 U.S.C. § 109(a).

D.      The Petitioners are the Debtors' "foreign representative," as such term is defined in 11 U.S.C. § 101(24).

E.      This chapter 15 cases were properly commenced under 11 U.S.C. §§ 1504 and 1515.

F.      The Petitioners have satisfied the requirements of 11 U.S.C. § 1515 and Fed. R. Bankr. P. 1007(a)(4).

G.      The Proceedings are a "foreign proceeding," as such term is defined in 11 U.S.C. § 101(23).

H.      The Proceedings are entitled to recognition by this Court under 11 U.S.C. § 1517(a).

2

I.      The Proceedings are pending in the country where each of the Debtors' have their center of main interests and are a "foreign main proceeding," as such term is defined in 11 U.S.C. § 1502(4), and are entitled to recognition as a "foreign main proceeding" under 11 U.S.C. § 1517(b)(1).

J.      The Petitioners are entitled to all the relief provided pursuant to 11 U.S.C. § 1520, without limitation.

K.      The Petitioners are entitled to all relief expressly set forth in 11 U.S.C. §§ 1521(a)–(b).

L.      The relief granted hereby is necessary and appropriate, in the interests of the public and international comity, consistent with the public policy of the United States, and warranted under 11 U.S.C. §§ 1517, 1520, and 1521.

Accordingly, it is hereby **ORDERED**:

1.      The Proceedings are granted recognition as a foreign main proceedings under 11 U.S.C. §§ 1517(a) and 1517(b)(l).

2.      All relief afforded a foreign main proceeding under 11 U.S.C. § 1520 is granted.

3.      In accordance with 11 U.S.C. § 1520(a)(1), 11 U.S.C. §§ 361 and 362 apply to the Debtors and their property that is currently within or may be brought into the territorial jurisdiction of the United States.

4.      The Petitioners are authorized to file notices of these cases, the applicability of 11 U.S.C. §§ 361 and 362, and any other such notices the Petitioners deem necessary in any of the pending litigation wherein a Debtor is a party or any other proceeding.

3

5.     The Petitioners are authorized to operate the Debtors' business and exercise the powers of a trustee to the extent provided by 11 U.S.C. § 1520(a)(3), including, for the avoidance of doubt, drawing down on the Debtors' United States bank, securities, deposit, and similar accounts and making distributions in the Proceedings.

6.     In accordance with 11 U.S.C. § 1521(a), all persons and entities, other than the Petitioners and their representatives and agents, are hereby enjoined from (a) commencing or continuing an action or proceeding concerning the Debtors' assets, rights, obligations, or liabilities; (b) executing against any of the Debtors' assets; (c) taking or continuing any act to create, perfect, or enforce a lien or other security interest, setoff, or other claim against the Debtors or their property; (d) transferring, relinquishing, or disposing of any property of the Debtors to any person or entity other than the Petitioners; or (e) declaring or considering the commencement of the Proceedings or the Debtors' chapter 15 case a default under any agreement, contract, or arrangement.

7.     In accordance with section 1521(4) and the Federal Rules of Bankruptcy Procedure (the "*F.R.B.P.*"), the Petitioners are authorized to conduct the examination of witnesses (including any and all parties or person subject to examination under F.R.B.P. 2004), the taking of evidence, or the delivery of information concerning the Debtors' assets, affairs, rights, obligations, or liabilities.

8.     In accordance with 11 U.S.C. §§ 1521(a)(5) and (b), the administration, realization, and distribution of the Debtors' assets located within the territorial jurisdiction of the United States are entrusted to the Petitioners, and the Petitioners are hereby established as the exclusive representatives of the Debtors in the United States.

9.      No action taken by the Petitioners, the Debtors, or their representatives in connection with these chapter 15 cases or any adversary proceeding filed by or against the them shall be deemed to constitute a waiver of the rights or benefits afforded such persons under 11 U.S.C. §§ 306 and 1510.

10.     A copy of this order shall be served, within five business days of entry of this order, by fax, e-mail, regular mail, or overnight courier upon all of the Debtors' known creditors and investors, the Office of the United States Trustee, and such other entities as the Court may direct.  Service in accordance with this Order shall constitute adequate and sufficient notice of the terms hereof.

11.     This Court shall retain jurisdiction with respect to the enforcement or interpretation of this Order and any request by any person or entity for relief from the provisions hereof.


###


Submitted by:

William S. Sugden
ALSTON & BIRD LLP
1201 West Peachtree Street, NW
Atlanta, Georgia 30309
(404) 881-7000 (telephone)
Will.Sugden@alston.com

*Counsel to the Foreign Representatives*

5