**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 15 |
| North Pointe Holdings (BVI) Ltd. (in | ) | |
| Liquidation) *et al.*, | ) | Case No. 18-24659-AJC |
| | ) | |
| Debtors in Foreign Proceedings. | ) | Jointly Administered |
| | ) | |

**THE JOINT OFFICIAL LIQUIDATORS'
REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL
COMPLIANCE WITH SUBPOENAS ISSUED ON
ERNESTO WEISSON, WEISSON HOLDINGS, LLC,
<u>AND OPPOSITION TO MOTION FOR PROTECTIVE ORDER</u>**

Hadley Chilton, Michael Pearson, and Stephen Briscoe, solely in their capacity as liquidators and foreign representatives (the "***Joint Official Liquidators***" or "***JOLs***") of each of the debtors recognized in these chapter 15 proceedings pending before this Court[1] (collectively, the "***Debtors***") file this brief in support of their Motion to Compel Compliance with Subpoenas (Doc. 37) ("***Motion to Compel***" or **"*Motion*"**) and in opposition to Ernesto Weisson and Weisson Holding, LLC's Motion for Protective Order (Doc. 44) ("***Motion for Protective Order***").  Despite personal service of the subpoenas on both Ernesto Weisson ("***Weisson***") and Weisson Holding, LLC ("***Weisson Holding***") (collectively, the "***Subpoena Parties***"), they have not fully complied with the Subpoenas,

---

[1] The Debtors include: Diversified Real Estate Development Ltd. (in Official Liquidation); GMS Global Market Step Up Note Ltd. (in Official Liquidation); Preferred Income Collateralized Interest Ltd. (in Official Liquidation); Sentinel Investment Fund SPC (in Official Liquidation); SG Strategic Income Ltd. (in Official Liquidation); Sports Aficionados Ltd. (in Official Liquidation); and Vanguardia Group Inc. (in Official Liquidation), which are domiciled in the Cayman Islands, Vanguardia Holdings Ltd. (in Liquidation), Spyglass Investment Management Ltd. (in Liquidation), Biscayne Capital (B.V.I.) Ltd., and North Pointe Holdings (BVI) Ltd. (in Liquidation), which are domiciled in the British Virgin Islands, and Biscayne Capital Holdings Limited (in Creditor Voluntary Liquidation), which is domiciled in Bermuda.

have not fully produced the documents sought, have not timely objected to the Subpoenas, have proffered an untimely and unpersuasive Motion for Protective Order, and have otherwise sought to avoid their obligations under the Subpoenas. In response, the Subpoena Parties rely on an untimely Motion for Protective Order filed just an hour before the Court's January 15, 2020 hearing on the JOLs' Motion to Compel. This tardy, past eleventh-hour effort does not establish good cause for issuing a protective order. *See* Fed. R. Bankr. P. 7026(c); Fed. R. Civ. P. 26(c). The JOLs therefore request that this Court reject Weisson and Weisson Holding's arguments, grant the Motion to Compel in its entirety as against Weisson and Weisson Holding, and hold Weisson and Weisson Holding in contempt under Federal Rule 45(g) (incorporated herein by Federal Rule of Bankruptcy Procedure 9016) should they not fully comply with this Motion within 14 days of the issuance of an Order on this Motion.

## I.    ARGUMENT

**A.    The Motion for Protective Order Is Untimely**

1.    On or about February 8, 2019, the JOLs effected personal service on Weisson of a subpoena that was issued by this Court. That subpoena commanded Weisson to produce the documents responsive to the subpoena by no later than February 22, 2019.

2.    On or about August 15, 2019, the JOLs effected personal service on Weisson Holding of a subpoena that was issued by this Court. That subpoena commanded Weisson Holding to produce the documents responsive to the subpoena no later than September 20, 2019.

3.    Neither Weisson nor Weisson Holding objected to or otherwise sought to quash or modify the Subpoenas within the time periods specified in the subpoenas. They

instead delayed until months after the production deadlines to raise their purported concerns with this Court.  The Subpoena Parties did not object or ask the Court to limit or modify them until the morning of the Court's hearing on the JOLs' Motion to Compel, months after the deadline for doing so.

4.      A motion for protective order must be filed timely.  *See, e.g.*, *Andrews v. CSX Transp., Inc.*, No. 3:06-cv-704-J-32HTS, 2009 U.S. Dist. LEXIS 136804, at *3 (M.D. Fla. Jan. 7, 2009); *see also Brittain v. Stroh Brewery Co.*, 136 F.R.D. 408, 413 (M.D.N.C. 1991); *Reed v. Fulton County Gov't*, 170 F. App'x 674, 675 n.1 (11th Cir. 2006); *Williams v. Am. Telephone & Telegraph Co.*, 134 F.R.D. 302, 303 (M.D. Fla. 1991); *Maxey v. Gen. Motors Corp.*, No. CIV. A. 3:95CV60-D-A, 1996 U.S. Dist. LEXIS 21149, at *1 (N.D. Miss. Nov. 18, 1996); *Berry v. Baca*, No. CV01-02069 DDP (SHX), 2002 U.S. Dist. LEXIS 15698, at *2 (C.D. Cal. July 29, 2002).

5.      A motion for a protective order is untimely if it is "made after the date the discovery material was to be produced." *Andrews*, 2009 U.S. Dist. LEXIS 136804, at *4; *see also Morock v. Chautauqua Airlines, Inc.*, No. 8:07-cv-210-T-17-MAP, 2007 U.S. Dist. LEXIS 104783, at *3 (M.D. Fla. Dec. 11, 2007) (quoting *Laughon ex rel. Laughon v. Jacksonville Sheriffs Office*, No. 3:06-cv-692-J-25HTS, 2007 U.S. Dist. LEXIS 31427, at *2 (M.D. Fla. Apr. 30, 2007)); *see also Maxey*, 1996 U.S. Dist. LEXIS 21149, at *1; *Ireh v. Nassau Univ. Med. Ctr.*, No. CV 06-09(LDW)(AKT), 2008 U.S. Dist. LEXIS 76583, at *2 (E.D.N.Y. Sept. 17, 2008) (In the context of Rule 45, a motion to quash "must be filed within the time set in the subpoena for compliance."); *Uzzell v. Teletech Holdings, Inc.*, No. C07-0232MJP, 2007 U.S. Dist. LEXIS 95197, 2007 WL 4358315, at *1 (W.D. Wash. Dec. 7, 2007) ("Because Plaintiff never objected, filed a motion to quash, or filed a

motion for a protective order until more than two months after the subpoenas were issued, he has waived all objections to the subpoenas."); *Universal City Dev. Partners, Ltd. v. Ride & Show Eng'g, Inc.*, 230 F.R.D. 688, 697 (M.D. Fla. 2005) ("Failure to serve written objection to a subpoena within the time specified by [Rule 45] typically waives any objections the party may have.").

6.     Accordingly, the Subpoena Parties cannot now ask this Court to take up their tardy, untimely attempt to modify and limit properly served, valid subpoenas.  Their Motion for Protective Order should be denied in its entirety as untimely.

**B.     Weisson and Weisson Holding Cannot Establish Good Cause for Issuing a Protective Order**

7.     Even setting aside the fact that the Motion for Protective Order is woefully untimely, it also fails on the merits.  For a protective order to issue, the Subpoena Parties must demonstrate that good cause exists to do so.  *See* Fed. R. Bankr. P. 7026(c); Fed. R. Civ. P. 26(c); *accord In re Adler*, No. 09-34791, 2010 Bankr. LEXIS 1615, at *4–5 (Bankr. S.D. Fla. May 13, 2010); *In re Willingham*, 493 B.R. 628, 633 (Bankr. M.D. Fla. 2013).  Notably, "[b]road allegations of harm" and "stereotyped and conclusory statements" cannot establish good cause under Rule 26(c).  *In re Adler*, 2010 Bankr. LEXIS 1615, at *8 (Bankr. S.D. Fla. May 13, 2010); *In re Willingham*, 493 B.R. 628, 633 (Bankr. M.D. Fla. 2013).  The Subpoena Parties cannot establish good cause for issuing a protective order.

8.     ***First***, the Subpoena Parties suggest that the subpoenas exceed the scope of the Court's January 11, 2019 *Order Recognizing Foreign Main Proceeding and Granting Additional Relief* (the "***Recognition Order***") (Doc. 22).  *See* (Doc. 44) ¶ 6 and at 4.  This argument is specious and ignores the JOLs' charge in the Recognition Order. This Court

expressly granted the JOLs the authority "to conduct the examination of witnesses (including any and all parties or person subject to examination under F.R.B.P. 2004), the taking of evidence, or the delivery of information concerning the ***Debtors' assets, affairs, rights, obligations, or liabilities***."  (Doc. 22), at ¶ 7 (emphasis added).  Since their appointment, the JOLs have worked diligently to investigate the circumstances that led to the commencement of the liquidation proceedings to realize proceeds for the benefit of the Debtors' estates and specifically, the Debtors' investors and creditors.

9.    Contrary to the Subpoena Parties' arguments, the JOLs' investigation is not simply an asset tracing exercise for a claw back action.  Rather, it also encompasses an investigation to develop claims and causes of action to hold those accountable for the Debtors' losses and for the circumstances which led to the commencement of the Debtors' liquidation proceedings.  "It is well established that claims and causes of actions, though intangible, constitute 'property.'"  *In re Octaviar Admin. Pty Ltd.*, 511 B.R. 361, 372 (Bankr. S.D.N.Y. 2014) (recognizing that claims and causes of action constitute "property" in Chapter 15 proceedings); *see also In re Coastal Plains, Inc.*, 179 F.3d 197, 207–08 (5th Cir. 1999); *Parker v. Wendy's Intl, Inc.*, 365 F.3d 1268, 1272 (11th Cir. 2004). This investigation—and the subpoenas at issue in the Motion to Compel and Motion for Protective Order—plainly falls under the JOLs' authority to "conduct the examination of witnesses . . . , the taking of evidence, or the delivery of information concerning the Debtors' assets, affairs, rights, obligations, or liabilities."  (Doc. 22).

10.    ***Second***, the Court should deny the Subpoena Parties' request that the subpoenas be limited to only four years before the subpoenas were issued.  *See* (Doc. 44) at 4.  As discussed at the January 15, 2020 hearing, these Chapter 15 proceedings concern

a $260 million Ponzi scheme that dates back to 1999, when South Bay Holdings, LLC ("**South Bay**")—a purported residential real estate development company—first formed. Based on the JOLs' investigation to date, prior to the commencement of the Liquidations, the Debtors were under common control and controlled for the common benefit of the four principals, including Mr. Weisson.  Certain of the Debtors appear to have issued not less than $260 million in Notes purportedly to fund South Bay's operations. Similarly, other Debtors herein were also involved with the issuance of the Notes, and Mr. Weisson and the other principals created several financial services entities under the name "Biscayne Capital" to offer financial advisory and brokerage services to Latin American investors that marketed the Notes to third party investors.

11.    Today, that capital is gone.  When the JOLs were appointed, there were no material liquid assets and no effective management of the Debtors.  This stands in sharp contrast to the funds raised from third party investors, which the JOLs collectively believe was in the region of $300 million.  It may have been more.  Based upon the Debtors' financial position as of the date of the Liquidation, the investors and creditors of each of the Debtors may suffer a near total loss of their invested capital.  The events that led to the Debtors' liquidations and these Chapter 15 proceedings have spurred over 20 lawsuits, including at least four criminal actions, in Florida, New York, and Illinois state and federal courts.

12.    Accordingly, information regarding this conduct, its impetus, and the relationships and transactions among the various actors involved—even that dating back

to 1999—is relevant to the JOLs' investigation.  However, the JOLs are willing to limit the scope of the subpoenas to the period from January 1, 2004 to the present.[2]

13.    ***Third***, the Subpoena Parties' complaint that the subpoenas seek duplicative information fails to establish good cause under Bankruptcy Rule 7026(c) and Federal Rule 26(c).   In doing so, the Subpoena Parties misstate and mischaracterize the JOLs' investigative efforts thus far.  Far from possessing "5.6 million [duplicative] documents," (Doc. 44) at ¶ 10, the JOLs have implemented artificial intelligence software to interrogate a 7.9 million document database.  With this software, the JOLs concluded that 5.6 million documents were at the time not relevant to their investigation, ***not*** that they were simply duplicative of documents in their possession.  Similarly, contrary to the Subpoena Parties' arguments, the JOLs do ***not*** have in their possession the servers for the email domains of South Bay or Evolution Consulting Partners, servers that the Subpoena Parties' appear to concede contain documents relevant to the JOLs' investigation.  *See* (Doc. 44) ¶¶ 10–11, 13.  More fundamentally, the Subpoena Parties should not be allowed to use a conclusory, blanket assertion of duplicative documents to obscure the fact that they have produced 17 pages of documents, 11 of which were redacted.  This argument is the very kind of "[b]road allegations of harm" and "stereotyped and conclusory statements" that cannot establish good cause under Rule 26(c).  *In re Adler*, 2010 Bankr. LEXIS 1615, at *8; *In re Willingham*, 493 B.R. at 633.

14.    ***Fourth***, the Subpoena Parties cannot establish good cause for sealing documents from public view or for limiting their use.  These requests already run contrary

---

[2] In a good faith effort to resolve this discovery dispute, the JOLs offered to counsel for Weisson and Weisson Holding to limit the temporal scope of the subpoenas to the period of January 1, 2004 to the present.

to the Court's charge to the JOLs "to conduct the examination of witnesses (including any and all parties or person subject to examination under F.R.B.P. 2004), the taking of evidence, or the delivery of information concerning the Debtors' assets, affairs, rights, obligations, or liabilities." (Doc. 22), at ¶ 7. Nor have the Subpoena Parties identified any compelling reason to disallow the public or any third party from viewing any materials produced to the JOLs. To the contrary, "most other courts have not been persuaded by" any argument that discovery should be limited to the immediate proceedings. *See, e.g.*, *Mitial v. Dr. Pepper Snapple Grp.*, No. 11-81172-Civ-Marra/Hopkins, 2012 U.S. Dist. LEXIS 192181, at *10 (S.D. Fla. May 29, 2012) ("[C]ourts have declined to enter protective order that limit the disclosure of discovery to individuals involved in the pending lawsuit, where the only purpose is to 'discourage future identical actions.'"); *Henderson v. Fedex Express*, 2009 U.S. Dist. LEXIS 56960, *4 (M.D. Ga. July 6, 2009) (even though plaintiff's counsel sought to use confidential documents in future cases brought by "currently unknown potential plaintiffs" against the same defendant, court refused to consider such as a basis for guarding the information in a protective order); *Cipollone v. Liggett Group, Inc.*, 113 F.R.D. 86, 91 (D.N.J. 1986) ("[A] number of courts have rejected requests to limit the use of discovery to the litigation in which it is initially obtained."); *Parsons v. General Motors Corp.*, 85 F.R.D. 724, 726, n.1 (N.D. Ga. 1980) ("The federal rules do not foreclose collaboration among litigants, and the court does not consider the possibility that plaintiff will share the results of discovery with any other litigant any part of defendant's showing of good cause to justify a protective order.").[3]

---

[3] The cases the Subpoena Parties cite in their Motion for Protective Order are inapposite. *Chevron Corporation v. Berlinger* concerns an appeal regarding the assertion of journalist privilege. 629 F.3d 297 (2011). The Eleventh Circuit only found that exercising journalist privilege was not appropriate in the case

15.    Moreover, courts are growing increasingly hostile to sealing court records and documents from the public view.  *See, e.g.*, *Sunless, Inc. v. Beautyxpert*, No. 11-24170-CIV-MIDDLEBROOKS, 2012 U.S. Dist. LEXIS 201430, at *2 (S.D. Fla. Apr. 20, 2012).  Additionally, it is clearly established that the general public possesses a common-law right to access judicial records and that judicial records are presumed to be public documents.  *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978); *see also, Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311 (11th Cir. 2001); *Brown v. Advantage Eng'g, Inc.*, 960 F.2d 1013, 1016 (11th Cir. 1992) (stating that judicial records are presumed to be public documents because "[o]nce a matter is brought before a court for resolution, it is no longer solely the parties' case, but also the public's case").  The Subpoena Parties have identified no privacy, commercial, or proprietary interest in information responsive to the subpoenas that could possibly overcome the interests of the public.[4]

## II.    CONCLUSION

In response to valid, enforceable subpoenas, Ernesto Weisson and Weisson Holding, LLC only sought to delay and avoid their obligations thereunder.  Their tardy past

---

and affirmed the district court's discovery order.  If anything, *Chevron* supports an argument for a more fulsome, public disclosure of information.  Similarly, *Sperry Rand Corporation v. Rothlein* did not address the question of limiting the use of discovery materials.  288 F.2d 245 (2d Cir. 1961).  Rather, the case only dealt with whether a district court's injunction violated the Anti-Injunction Act or whether granting such an injunction was within the district court's discretion.  Both decisions are, at best, tangential to the question before the Court of whether the Subpoena Parties have established good cause to limit the use of materials produced in response to the subpoenas, when the weight of federal decisions actually disfavors such constraints.

[4] The JOLs, of course, are mindful of their obligation under Federal Rule 5.2 to make appropriate redactions for certain personally-identifiable information, which should mitigate any reasonable concern that the Subpoena Parties may have.  *See* Fed. R. Civ. P. 5.2.

eleventh-hour Motion for Protective Order is untimely, unpersuasive, and wholly fails to establish good cause for issuing a protective order.

WHEREFORE, the Joint Official Liquidators respectfully request that this Court reject Weisson and Weisson Holding's arguments, grant the Motion to Compel in its entirety as against Weisson and Weisson Holding, and hold Weisson and Weisson Holding in contempt under Federal Rule 45(g) (incorporated herein by Federal Rule of Bankruptcy Procedure 9016) should they not fully comply with this Motion within 14 days of the issuance of an Order on this Motion.

[Signature on Following Page]

Respectfully submitted this 28th day of January, 2019.

EFR LAW FIRM

/s/ *Alan F. Pryor*
Eduardo F. Rodriguez (Florida Bar No. 36423)
1 Alhambra Plaza, Suite 1225
Coral Gables, Florida 33134
(305) 340-0034 (Telephone)

and

ALSTON & BIRD LLP
William Sugden (*Admitted pro hac vice*)
Alan Pryor (*Admitted pro hac vice*)
1201 West Peachtree Street
Atlanta, Georgia 30309
(404) 881-7000 (Telephone)

*Attorneys for the Joint Official Liquidators*